We have one case this morning which we're going to call. And before we do, I'd like the lawyers to know that we have a class here from a law school that we'll be observing. So do your best and make a good show for them and I'm sure we'll do a great job. So we'll call the case now. 15-1601, People v. Frank Stein So if both of the attorneys that are going to argue this morning would step up to the podium and please state your names for the record. I'm Grace Palacio from the Office of the State Appellate Defender. Assistant State's Attorney, Leonore Carlson. And would you spell your last name? Carlson, C-A-R-L-S-O-N. Okay. And Ms. Palacio? Palacio. Palacio. If you would be so kind as to speak up so that everybody can hear you because there's people in the back rows. All right? Okay. Before we begin, we will allow each side approximately 15 minutes to give argument. And from that, Ms. Palacio, you may save out some time for rebuttal. Okay. Before you start, let me ask you a simple question. Yes. Do you want us to write that any time a police officer goes into a neighborhood and asks somebody, you know, that they want drugs, that they need a fix, that this is entrapment? No. Absolutely not. Okay. May it please the Court, my name is Grace Palacio and I represent the defendant, Frank Sick. I'd like to request two minutes of rebuttal. Okay. And if you would please try to speak up a little bit, the microphone will project quite a bit. Frank was walking down the street one day when an undercover police officer named Officer Corona asked for his help to buy some heroin. Now, Frank is an admitted drug addict. But he said no when Officer Corona asked for his help. When Officer Corona asked him again, he said no a second time. But then the officer told him that he was, quote, unquote, messed up, and then added that if Frank bought him some heroin, he would buy Frank some too. He gave Frank $30 and said he wanted two blows. So Frank thought Officer Corona, the two blows, or $20 of heroin, gave the officer the drugs and kept the extra $10 for himself. After Officer Corona drove away, Frank was arrested and then convicted of delivery of a controlled substance. Now, at trial, Frank was under the affirmative defense of entrapment. In order to prove entrapment, the evidence has to show that, one, the state improperly induced the defendant to commit the crime, and, two, the defendant was not already predisposed to commit the crime. Is there any evidence in the case of predisposition? I would argue no. There's about eight factors that we tend to look at to look for predisposition. And I think if you look at those objectively, at most they show that Frank, as he testified to, was an addict. So he would have had some kind of access and knowledge about drugs. But I don't think any of those addicts prove, as the state is required to prove, beyond a reasonable doubt, that he was predisposed to sell drugs. Well, wasn't he willing to do this within minutes after the initial interaction? True, but this is a pretty straightforward, simple case. When Officer Corona asked him, he said no the first time, he said no a second time, and it was only after the third time when he... Yeah, but that was just a few minutes, right? Yes, it was a few minutes. So that's one factor, but that's one factor of eight. I think if you look at the remaining factors, altogether the state just fails to prove that beyond a reasonable doubt that he was predisposed to commit the crime of selling drugs. Did the officer remember it the same way? Did the officer say that the defendant denied it twice, turned him down twice? The officer had a different version of events. Okay, and in the officer's version, there was no denial, that he... No, he did not. I think the officer did admit to initiating the conversation, but then... He did, he did initiate, which is an important fact. No, no, absolutely, no question, but then once he initiated, the defendant said how many blows do you want? Yes. Okay, why isn't that the version that we would adopt here? There are two different versions here, but I would say that if you look at the testimony of the versions of the officer and the defendant, Frank was far more consistent throughout his testimony. Yeah, but aren't you asking us now to make a credibility determination here? I am. I'm asking that we look at the evidence... Well, how do we make a credibility determination? What case gives us that ability? Well, the case says that typically this appellate court would give deference to the trial court's findings. But for us, the findings are improbable, unreasonable, or unsatisfactory, so as to give rise to a reasonable doubt. And I would argue in this case, Officer Corona's testimony is questionable enough that it leads to a feeling that it is improbable. One, there's just the evidence that supports Frank's testimony. The undisputed evidence is that Officer Corona gave Frank $30. He asked for two blows. He received two blows, which is $20 worth of heroin, and Frank was then found with the $10 of remaining pre-recorded funds that were used in this case. That aligns perfectly with this version of events. He said the officer gave him $30, he wanted two blows, and that the other $10 was either for himself to go buy drugs for himself, or, like Frank said, he didn't want heroin that day. He wanted PCP. So he kept the $10, and that is what they found him with when he was arrested. How about the exchanging of the phone numbers and talking about future transactions? That's also the officer's testimony, but I would argue that there are parts of the officer's testimony that is questionable, because at first the officer testified that he pulled up and immediately Frank is the one who came up to him and asked for heroin. Is there any evidence in the record that the officer actually provided proof that they exchanged phone numbers? That would be easy enough to show. There is nothing in the record. There's nothing in the record that indicates he got his phone number, or that he testified to the phone number, or that they checked phone records and they matched his cell phone. Because he apparently got on the phone in the car, didn't he? Right. Well, that cuts both ways, doesn't it? He was able to just get that phone going and call somebody, and then he leaves to go get the drugs. You can look at it that way, or you could also think that Frank says he's a drug addict. So as a drug addict, he's going to know where to find drugs. That is something that he needs to do every day to feed his drug addiction. So to say that just because he has access to drugs does not necessarily show a predisposition to selling drugs. Well, what is it about the officer's testimony that is so unbelievable that we should come to the conclusion, in a rather rare thing, we don't do it very often, that we should not accept the trial court's acceptance of that testimony? I think if you look at the officer's testimony, where he twice testified that, you know, Frank is the one who came up to me and asked if I wanted drugs. And it was only after defense counsel showed him the supplemental report in which he makes no mention of Frank doing this that he goes back and he says, no, I rolled the window down, I asked him for drugs. And the trial court, in making its credibility determination, said that this was a minor inconsistency. But I would argue in an entrapment case, this is not minor. In entrapment, if you have an entrapment defense, you have to show that the criminal purpose originated with the state agent. And so what Officer Carono was inconsistent about is a major fact. He was saying that he did not initiate this drug transaction. He's saying that Frank did it. This is not minor. This is not insignificant. Whereas Frank was consistent the entire time, saying, I was standing out there, and this officer asked me to help him buy him some drugs. What are the factors that we consider of the eight or so? Which are the ones that support your position today? That he was not predisposed? I would say that pretty much almost all of them. His familiarity of drugs speaks much more than the fact that he's a drug addict. His willingness to make a profit. His profit in this case was $10. And the appellate court in People v. Day found that $10 is not considered a profit that shows predisposition. Was there any evidence that he's sold drugs in the past? There's absolutely no evidence of that. Officer Carono testified he didn't see him participating in any drug transactions. Officer Watson, who was a surveillance officer, did not witness anything like that. Frank's criminal background does not include any dealing of drugs. At most, it has 30 years ago of a conviction for possessing drugs. Again, that is not showing a predisposition to the delivery of drugs, which is what he was charged and convicted of in this case. Because the record does show he had a pretty ready access to a drug supply. He did have a ready access supply, but I would think that would be expected of a drug addict. And he admits that. He willingly admits that. He says, I'm a drug addict. I'm addicted to heroin and PCP. So it's not surprising that he would know where to find heroin or PCP. I don't think that factor shows predisposition. It certainly does not show it beyond a reasonable doubt. But at the end of the day, isn't our standard of review the same as it is in every criminal case? And I think Justice Gordon began with the idea that a reviewing court can't substitute its judgment for the trier fact with respect to the evidence and the credibility of witnesses. Isn't really that the case? I mean, in People v. Rivas, which is a delivery case, the court pointed out that at the end of the day, our standard of review is the same as it is in every criminal case, whether the elements are there beyond a reasonable doubt, and we give weight to the or we weigh these things in evidence of the prosecution. Don't we? It's the light most favorable. Right. I agree. It's the light most favorable. But there is the caveat of there's an exception in those instances when the evidence is so impalpable, unreasonable, or unsatisfactory. Now, to argue in this simple case, we just have two versions. And the version that is the most questionable is Officer Corona's. What he was inconsistent about goes to the heart of the case. Did he initiate this drug transaction? He said he did not, and then it was only after being confronted with his supplemental report that he then go back and agree, no, I was the one who first approached the defendant and asked him about drugs. Is there a case, though, that you've cited that's similar enough to this one that would warrant a reversal? I would argue that People v. Bonner is a good case for us. In Bonner, like this case, the defendant was induced by a police officer. He was also a non-drug dealer, and the officer asked him multiple times if he would help him buy drugs. And in that case, the officer finally was able to induce him by offering sexual favors. Right, but in that case, wasn't this a prolonged time before Bonner agreed to sell any drugs? I agree. I think there are several cases like that where it was after a number of propositions or requests and an obvious reluctance over a period of time. Here, I think as Justice Gordon pointed out, we have a couple of minutes, don't we? I agree. Most of the case law has to do with far more expensive drug cases, drug stings, in which it's a prolonged back and forth. Our case right here is much more simple. It's probably much more common. It's just a daily, simple drug transaction. But it doesn't mean the principles don't still apply. Frank said no the first few times. It took a couple of times. And then the officer said, I messed up, suggesting that maybe he wasn't feeling well because he may have needed drugs. And then on top of that, there was the inducement by the offering of either money or drugs for Frank to go do this for him. So while the case is unformed. But counsel, that's just what the defendant said. Yes, it is. And the judge didn't believe that, did he? It did not. But again, I would go back to my argument that if you look at the two version of events, the witness that was most consistent and whose testimony was supported by the actual indisputable facts, which is the money that was used, the money that was recovered, the drugs that were recovered, that aligns with Frank's version of events, not with Officer Corona's. Would it be reasonable in looking at these facts to come to the conclusion that, even if the defendant did not initially say yes, that sometimes drug dealers are suspicious of the people who approach them, maybe worrying that they're police officers. And so they don't necessarily jump the moment a car pulls up. Maybe they wait for them to initiate, and then they maybe want to think about it a little bit, to sort of feel out whether they, you know, this seems like a bust versus a person really looking for drugs. I mean, is that so beyond the pale that the trial court couldn't have made such a finding? It's not beyond the pale, but I think Frank's burden was to provide some evidence of inducement, which he did. And then it was the state's burden to prove beyond a reasonable doubt that he was not already predisposed to commit this offense. And there simply isn't anything in the record, or much of anything in the record, to show that he had hit this predisposition. As Frank said himself during allocation, you know, I take my guilt for the part of, yes, I bought him some drugs, but that is not what I do. I don't sell drugs. I use drugs. I don't sell it. The fact that they don't have any drug-dealing convictions in my past, and then this is a quote that he said, is not a default. He was trying to explain to the court that he might be a drug user, but he is not a drug seller. And so I just don't think the state met its burden of proving beyond a reasonable doubt that he was predisposed to commit this crime. I don't think the evidence shows that he would have committed this crime without the inducement by the state. Anything for you at this time? No. In sum, the evidence showed that the state induced Frank to participate in the delivery of a controlled substance and failed to prove beyond a reasonable doubt that he was predisposed to sell heroin or any other drug. Because the state did not sustain its burden of proof, we ask this court to reverse Frank's case conviction. All right. We'll allow you some time for a brief rebuttal after we hear from Ms. Carlson. Good morning. Good morning, Your Honors. Assistant State's Attorney, Leonore Carlson, on behalf of the people, may it please the court. Counsel, do you concede that the defendant presented enough evidence to shift the burden of proof onto the state to prove lack of or predisposition beyond a reasonable doubt? That, sorry, for the affirmative defense? Yeah. Do you believe that the defendant presented enough evidence to require you to act? It is unclear on the record whether the tri-court even found that he met the burden of showing some evidence that he made his affirmative defense. However, the court ended up in his conclusion determining that the state's witnesses were credible and the defendant was not credible. But the defendant here – But what do you say? Is it your position that he didn't even make a prima facie case to shift the burden to the state? I would argue that they did not even make a prima facie case. However, it's unclear on the record whether or not the court found that he actually met his affirmative defense. The defendant would have this court view the facts of this case in the light most favorable to the defendant. However, as this court is well aware, that is not the standard of review. When there is a challenge to the sufficiency of the evidence, this court must determine whether any rational trial of fact could find the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. And those facts will show that the defendant was not entrapped into delivering heroin. We still look at all the factors, don't we? We don't ignore the eight factors that the courts have set out for that purpose. No, Your Honor. We do not ignore the eight factors. However, the court also heard those eight factors, considered the law of entrapment, and found that the defendant was not entrapped. What about the first factor? Is there some evidence that he had some reluctance? If we at least consider what's in the record where he testified that it was a couple of times before he agreed to get him drugs and he said the reason I did was because I thought he was sick and that, you know, the locals wouldn't sell to him. He was not reluctant. Even if we believe that he denied the officer two times, he still did not hesitate to make a phone call. He did not hesitate to get into the officer's car. He did not hesitate to direct the officer two blocks west. Yeah, but wasn't, I mean, isn't the factor there's an initial reluctance or ready willingness to, I mean, you just said it. We accept it. He testified that he asked him twice and he refused both times. And then he says, the officer said, well, you know, I'm sick, ma'am. I need something, something like that. You know what I mean? So is there some evidence of at least that first factor? The court heard that testimony and did not believe that the defendant had denied the officer's initiation. And, in fact, the officer, he testified that he rolled up to him, rolled down his window, and asked for heroin. A mere inquiry is not, does not amount to originating the criminal enterprise. There's no barrier to a finding guilty of a delivery simply because the officer initiated the transaction. Yes, just the officer providing an opportunity, which speaks to the analysis of whether or not he was induced. Case law shows that an officer merely providing an opportunity does not amount to being induced. What about the profit? Is there any here? There was a profit. There was $10, in fact. When they exchanged the transaction, when it occurred, the defendant provided the officer two tinfoil packets and the officer gave him $30. This is what we know is that this is how much those two tinfoil packets cost. And he profited off of that when he was found and arrested and picked up with $10 of those tracked funds on his person. There's also evidence of his current drug use, right? He readily admitted that, but he's a heroin addict and PCP. He's addicted. Again, Will that help on justice? Under the factors? Potentially, it could help you. It could help. And the case that the defendant cites, Sherman v. United States, in that case, which is completely different, it painted a picture of a defendant who was very vulnerable and who had been clean and had been coerced over a period of time into engaging into a narcotics transaction. Well, and that's what most of the cases show, that it's not really like a two-minute reluctance, but more like months or weeks in which the person indicates a reluctance to deal or sell. Correct? Yes, Your Honor. The case law has shown that this happens over a prolonged period of time. In the case that the defendant cites, people v. Bonner, the government agent, the informant, was providing sexual favors. And in that way, the defendant lost his own agency and caved in to engaging into a narcotics transaction. Yeah, on the other hand, though, in this case, there's really no evidence of him testing or cutting the drugs. Correct? Correct, Your Honor. There's no evidence of him being involved in similar offenses. In fact, the officers testified that they didn't observe him doing anything out in the street other than just being out there. True? This is correct. This is not evidence that came in. However, the defendant does bring up that he lacks a criminal history with regards to delivery of a controlled substance. However, that evidence actually never came in at trial, so we would ask the court to not consider that, his lack of a criminal history. Well, but why are you asking us to not consider it? The record indicates that he doesn't have any, he wasn't engaged in any other similar offenses either that day or any time. Isn't that true? Well, the record does not show that, this evidence that the prosecution or defendant brought in his criminal history. So for that reason, we would ask that you not consider that. And there's a reason for that. What is that? In the common law record, it shows that after 1998, 1988, he had a conviction for possession of a controlled substance. And for much of that time, up until this interaction, he had been in and out of jail and incarcerated and had multiple convictions. Sure. But are any of those delivery of a controlled substance? No, Your Honor. And on this day, didn't two officers testify that they did not observe any drug transactions on the street? This is true. And this speaks to how they did not even know that he was vulnerable or if he were someone who was addicted to drugs, they were not preying on him. But this factor does not weigh in favor of the defendant. What does the V factor mean? Tell us about that, the defendant's subsequent activities. Well, after the transaction happened, the officer and the defendant discussed further transactions. Right. But there's no evidence of that in the record either, is there? The officer doesn't present any testimony or there's no evidence about the phone calls or the phone numbers or anything like that, is there? There is testimony. Yeah, there's testimony, but there's no evidence to suggest or support that, is there? In other words, there's not, like, are you referring to tangible? Yes. Any physical evidence, any records of his phone number, anything. There's nothing in the record that supports that. I think what Justice McBride is saying, is there any cooperating evidence? There is no cooperating evidence. However, when the defendant testified, he did not rebut that evidence. He never denied that this didn't take place. This is unrebutted by the defendant. All right. So let's go back to the beginning of this. It seems to me the defendant's biggest argument is how this all started, that the defendant doesn't plan on doing anything. A police officer rolls up, and he asks him more than once. He asks him once, he says no. He asks him twice, he says no. This is the defendant talking, of course. And then the third time, the officer, the undercover officer, suggests that he's drug sick. He says something, you know, I'm in a bad way, I need some drugs. And in, I guess, some kind of fit of compassion, the defendant then decided to help him. We do take the evidence in the light most favorable to the State, obviously. But isn't it fair to say that the officer was not real clear on how this began? I mean, he said, I think, more than once in his direct testimony that he did not initiate this conversation. Right? Yes. In his direct testimony, he initially said that the defendant asked him, what did he want? And then he said, I would like heroin. And then on cross, he said, actually, no, that did not happen. I asked for heroin first. But on redirect, on redirect, the officer admitted that that was a mistake in his initial testimony. What about the other officer? What was his, what was his impeachment? There was something in the brief that the other officer was impeached as well. Regarding the amount for a dime bag. Oh. The officer, the arresting officer, had picked up the defendant and found $10 of the CPD track funds, which leans in favor that he made a profit off of it. Does he also support the argument that counsel made? That two dime bags is $20? No, Your Honor, because the buying officer never stated how much he thought the bags of blow were. He never mentioned actual, quote, dime bags. It was the arresting officer who was asked about how much is a dime bag, and that arresting officer responded with, of cannabis. He did not even know that he was referring to heroin. The defense counsel asked him, no, of heroin, and he said, based on your contextual clues, I would imagine he surmised that it would be $10. But that's not something that he was pinned down to, and it was surely not the buying officer who said that, yes, I know that dime bags or blows are $10. All we know is that these two tin foil packets, which amounted to 0.4 grams of heroin, were $30. Wouldn't you suggest that in this record the judge specifically said that he believed the officers and not Mr. Stiff? Yes. That supports your position, doesn't it? Yes, we believe that it does support his position. And the trial court was able to hear their testimony, was able to see their demeanor in front of them, was able to weigh the evidence, and did mention that the officer, the initial, the buying officer, did have inconsistencies but determined that those were minor. So the entrapment defense still requires that this court, we can't substitute our judgment, can we, for that which the trial court made when he specifically said that. The standard is to defer to the trial court since they're in the best position to see the witnesses come before them and testify. But you will agree that when you look at the police report and the officer's testimony, there's a difference between a pea and an elephant, isn't there? Well, there is a difference in his police report. However, again, the trial court determined that overall, based on the totality of the circumstances, that the state witnesses were credible and the officer admitted as much that it was a mistake when he initially testified that the defendant came up to him and asked him for heroin. It is kind of an unusual case, though, isn't it, in terms of the fact that this person has had a, you say the record demonstrates he has a history of convictions. And it's in the record, in his pre-sentence investigation. There's multiple convictions. It is kind of unusual or different than the usual delivery of a controlled substance case or possession with intent to deliver where the individual has multiple, perhaps, convictions. And there will be a number of transactions on the street, forgetting even prior convictions. We do not know whether or not he has engaged in this in the past because he did not necessarily have an opportunity to do so since he had been in and out of jail for a substantial period of time. But his record says what it says. I mean, he has a conviction for burglary. He has multiple convictions for theft. I think there's a conviction for armed robbery. He hadn't been in the penitentiary for a while, apparently, at the time of this. But, I mean, you have to agree, don't you, that this isn't your typical case where the person is either observed performing multiple transactions and then is arrested or there's evidence of a prior conviction for this kind of an offense. I mean, it is unusual in that sense, isn't it? Based on the facts of this case, that evidence did not come in. And had it come in, we would have been able to determine whether or not it was unusual. But because we did not bring that evidence in, we do not believe that the court should consider his history regarding whether or not he has engaged in similar offenses. Well, the record shows what it is. If he had prior convictions for possession with intent to deliver, you would be able to present that, wouldn't you? He testified. Yes, Your Honor, he did testify. And we did not present evidence of his criminal history. But if you had, it wouldn't include a delivery. That's all. We do not know because we do not know if he – let's just say similar offenses. We don't know whether he's been arrested and if a charge had been pled down. We don't have that information. No, but one of the factors that we have to consider is the defendant's engagement in a course of conduct involving similar offenses. And we don't have that here, do we? We do have his conviction for possession of a controlled substance. Well, that's not selling. Let me ask you another thing. I mean, it wasn't at the trial. Another thing that bothers me in all of these cases, this officer saw the defendant go into an alleyway where the transaction occurred, right? There was no officer backup or any other officers to arrest the person who is the source of the drugs. Why don't the police go to the source of the drugs? Why only to the little guy on the street? We don't have evidence of whether – there's nothing presented in the record that there was a source in the house. We don't know where he got the drugs from. Well, I thought there was evidence that this transaction occurred in an alleyway, that he saw the alleyway, but he didn't see who was in the alleyway. It occurred – so the defendant got out of the officer's car, went into a house for a few minutes. We don't know what he was doing inside, but we do know is that he came back with heroin and provided the officer that heroin. Was anybody arrested in the house? To my knowledge, I do not know of anyone who was arrested. Did the police go into the house? The police did not go into the house. So why are the sources allowed to be freely distributing drugs when the police just pick up a guy on the street? When are they going to go to the source of the drugs? Why does the state's attorney look into that fact? Why don't we ever get to the source of the drugs? The logical inference is that the defendant had ready access to the drugs, and he was the dealer, which is why he was followed a couple blocks north and then picked up with the money. Let me try this again. The beginning of this drug transaction, the officer did not seem to remember correctly, more than once did not remember correctly, then was confronted with his reports and changed his testimony a little bit. It seems to me it's a pretty critical part. It seems to me what the defendant primarily focuses on is how this all originated. I know the trial court accepted the testimony, and I know the standard. I'm going to put those two things to the side. We do sometimes overturn these findings where we find it's just not capable of reasonable belief. Sometimes even good judges just make mistakes. Why should we have any confidence that the police officer really remembered how this began? The defendant's version where he asked him a few times versus his version. He has the defendant walking over to him and soliciting him. The defendant walked over to me and asked me if I wanted some heroin. When we confronted him with the reports, he said, oh, no way, I guess I'm going to ask. How do we have any confidence? Why should we have any confidence that that officer really even remembers how this began? Again, the officer was presented to the trial judge who was able to hear the testimony. But even if this court were to believe defendant's testimony as a matter of law, this is not entrapment. He was not coerced over a long period of time. He accepts that twice. If you accept that twice, he refused, that's still not sufficient. If we were to follow defendant's reasoning to its logical conclusion, it would be that any time that someone who has an addiction to drugs helps out another fellow addict and delivers and makes money and profit to another person whom he believes has an addiction to drugs would never be entrapment as a matter of law. Yes. And that is not the case here. Your position is that even if you accept everything that he testified to, it's still, in light of all the factors, ways in favor of the State. Yes, Your Honor. All right. Is there anything further you would like to add? In sum, the facts viewed in the light most favorable to the prosecution show the defendant was not entrapped. We ask this court to affirm. All right. Thank you, Ms. Carlson. Ms. Palacio, you may have a brief reply, rebuttal. Just a few quick points. I'd like to maintain that the defendant did provide enough evidence down at the trial court to then shift the burden to the State. The case law says that the defendant only needs to present some evidence, however slight, in an entrapment defense to then shift the burden to the State to then prove that he was not induced and also that he was predisposed to commit the crime anyways. As for the standard of review, as we've talked about, yes, typically appellate courts defer to the findings of the trial court. But it's not in all cases. The evidence still needs to be reasonable. It can't be a case where the evidence is improbable. But if we say this is unreasonable, aren't we saying that any time the undercover operative initiates its entrapment? No, I'm not saying that. I'm saying if we look at all of the evidence in the case, and the State's case is based on Officer Corona's testimony and that the evidence, his testimony, simply was not consistent and he was impeached in a significant and important portion of his testimony, whereas the defense case was based on the defendant's testimony, which was consistent and then corroborated by the actual evidence that was recovered in this case, which is the money and the number of blows which were purchased for Officer Corona. But in his own report, his initial report accurately portrays that he initiated the buy. Yes. And then at trial, he admitted that he made a mistake as far as his own recollection. But his report, which he prepared right after this, readily concedes that he's the one that initiated it. And that doesn't really defeat entrapment as a general rule. It doesn't defeat entrapment, but I think it is telling that when the officer was before the court testifying as to how this occurred, his initial testimony two times was that, no, the defendant is the one who initiated the buy with me. And for the entrapment defense, you have to show that the criminal conduct originated with the state agent. What Officer Corona was testifying to was showing that the original criminal conduct originated with the defendant. That's significant. It's not minor as the trial court found. So I think if we're going to have a common sense evaluation of this evidence, I think what was shown here is that the evidence shows that the defendant was induced by the state by an offer of money in order to buy the drugs. And then the state utterly failed to prove beyond a reasonable doubt, which is their burden at the trial court. They didn't show that he had any background. They didn't show that he knew how to cut anything. That was the state's burden. They did not meet that burden. Therefore, we ask that you reverse the defendant's conviction. All right, thank you. The case was well-argued and well-briefed, and this court will take the matter under advisement. And we stand adjourned.